United States District Court
Southern District of Texas
**ENTERED**
June 28, 2019
David J. Bradley, Clerk

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **ENRIQUE VALENZUELA, JR. &** | § | |
| **MARISELA VALENZUELA,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. B-18-36** |
| | § | |
| **BANK OF NEW YORK MELLON,** | § | |
| **Defendant.** | § | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On January 10, 2018, Plaintiffs Enrique Valenzuela, Jr., and Marisela Valenzuela ("Plaintiffs") filed a petition against Bank of New York Mellon ("BONY Mellon"or simply "BONY") in the 103rd District Court in Cameron County, Texas, for claims relating to a mortgage note on property owned by Plaintiffs. Dkt. No. 1-1, p. 9.  In that complaint, Plaintiffs sought relief based upon: (1) promissory estoppel; (2) breach of contract; (3) fraud; and, (4) a declaratory judgment that BONY Mellon abandoned its prior acceleration of the note. Dkt. No. 1-1, pp. 14-15.  On February 23, 2018, BONY Mellon removed the case to this Court. Dkt. No. 1.

On March 14, 2019, BONY Mellon filed a motion for summary judgment. Dkt. No. 16.  The motion has been fully briefed; Plaintiffs filed a response, BONY Mellon filed a reply, and Plaintiffs filed a sur-reply. Dkt. Nos. 19, 22, 23.  The motion has been referred to the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B).

On June 13, 2019, the Court notified the parties that the Court was considering entering summary judgment for the Plaintiffs on the issue of whether BONY Mellon had abandoned its prior acceleration of the note.  Dkt. No. 24.  The Court gave the parties until June 24, 2019, to file any additional evidence or argument.  Id.  On June 24, 2019, BONY Mellon filed its response. Dkt. No. 25.

After reviewing the record and the relevant case law, it is recommended that BONY Mellon's motion for summary judgment be granted. Summary judgment should be granted in BONY Mellon's favor as to the claims of promissory estoppel, breach of contract, and fraud. As to the declaratory judgment claim, the Court should dismiss that claim without prejudice for lack of jurisdiction, because the claim is now moot.

## I. Background

### A. Factual Background

On June 22, 2007, Enrique Valenzuela signed a home equity note on Plaintiffs' homestead property at 2370 Calle Esplendida in Brownsville, Texas, for $770,000, payable to Countrywide Home Loans, Inc. Dkt. No. 19-1, p. 2.

At some unspecified time in 2008, Plaintiffs "began to have difficulty paying the monthly mortgage payments, but were never able to obtain any assistance or information from Countrywide related to re-financing the Loan." Dkt. No. 19, p. 7. In July 2008, Bank of America acquired Countrywide and began servicing the loan. Dkt. No. 16-2, pp. 3-4.

Plaintiffs have not made a payment on the loan in almost a decade. In fact, the loan has been in a state of delinquency since Plaintiffs failed to make the payment that was due on November 1, 2009. Dkt. No. 16-2, p. 4.

In November 2009, Plaintiffs submitted a loan modification request to Bank of America. Dkt. Nos. 19-3, p. 2. Enrique Valenzuela, in a sworn affidavit, stated that he was told "to not attempt to communicate with any bank officers until the request was processed and decided," and that Plaintiffs were instructed not to "make any mortgage payments until" the loan modification request was either approved or denied. Dkt. No. 19-9, p. 2.

According to Bank of America, on May 21, 2011, it sent Plaintiffs a letter, stating that the loan was "not eligible for a modification" and advised Plaintiffs as to other avenues they could pursue to avoid foreclosure. Dkt. No. 16-2, p. 66. Valenzuela stated in his sworn affidavit that he "never received a letter from Bank of America purporting to deny our modification request." Dkt. No. 19-9, p. 3.

2

Valenzuela asserts that in August 2011, he met with a Bank of America representative in McAllen, Texas, where he was told that the modification request was "still being processed" and that he was asked to provide additional documentation in support of the modification request. Dkt. No. 19-9, pp. 2-3.

On October 2, 2012, Bank of America transferred its interest in the note to Bank of New York Mellon. Dkt. No. 16-2, p. 62.

On October 26, 2012, Bayview Loan Servicing, LLC, sent Plaintiffs a letter, explaining that Bayview would be servicing the loan for Bank of New York Mellon. Dkt. No. 16-2, p. 69.

On April 14, 2015, Bayview sent Plaintiffs a letter, informing them of its intent to accelerate the loan, if the Plaintiffs did not cure the default within 30 days. Dkt. No. 16-2, p. 90.   When that deadline passed without the default being cured, Bayview began foreclosure proceedings.   On June 9, 2015, Bayview filed an application for a non-judicial foreclosure in the 357th District Court in Cameron County, Texas. Id. at 4.   On February 5, 2016, Plaintiffs filed a lawsuit in the 103rd Judicial District Court in Cameron County, Texas, seeking a declaration that the loan documents did not conform with the Texas Constitution. Valenzuela v. Bank of New York Mellon, Civil Case No. 1:16-55, Dkt. No. 1-1 (S.D. Tex. 2016) ("first lawsuit").   On February 23, 2016, the non-judicial foreclosure application was dismissed, based upon the Plaintiffs's filing the first lawsuit.[1]

On June 16, 2015, Bayview sent Plaintiffs a mortgage statement, which sought a payment of $525,695.94, by July 1, 2015. Dkt. No. 19-7, p. 3.   That amount represented the past due balance in addition to the regular monthly payment. Id.   Bayview did not seek full payment of the entire outstanding principal balance, Id., which would have been consistent

---

[1] The first lawsuit was removed to federal court. First Lawsuit, Dkt. No. 1.   On May 23, 2016, the first lawsuit was dismissed with prejudice for being filed beyond the statute of limitations for such claims. First Lawsuit, Dkt. No. 5.   Because the underlying legal claims raised in this case are different, there is no res judicata applicable to the instant suit.

with an acceleration of the entire note.  Enrique Valenzuela stated, in a sworn affidavit, that the June 2015 mortgage statement was the first monthly mortgage statement he had received since Bayview began servicing the loan in October 2012. Dkt. No. 19-1, p. 3.

On September 16, 2015, Bayview sent Plaintiffs another mortgage statement, seeking payment of $547,659.63, by October 1, 2015. Dkt. No. 19-7, p. 5.  Again, the amount represented the past due balance in addition to the regular monthly payment, and did not seek payment of the full outstanding balance on the loan. Id.

During this litigation, Plaintiffs filed a loan modification request with Bayview. Dkt. No. 16-2, p. 96.  On November 19, 2018, Bayview denied the loan modification request Id.

According to Defendants, as of February 28, 2019, Plaintiffs have an unpaid home loan balance of $1,519,915.42. Dkt. No. 16-2, p. 108.

On May 20, 2019, BONY Mellon and Bayview sent a letter to Plaintiffs's counsel, expressly rescinding "the acceleration of the maturity" of the note. Dkt. No. 25-2.

**B. Procedural History**

On July 25, 2016, Bayview filed a renewed application in state court for a non-judicial foreclosure, which was assigned to the 357th District Court in Cameron County, Texas, as Case Number 2016-DCL-04725. Dkt. No. 16-2, p. 4.

On January 10, 2018, Plaintiffs filed a lawsuit against BONY Mellon, which was assigned to the 103rd District Court in Cameron County, Texas. Dkt. No. 1-1, p. 9.  In that suit, Plaintiffs set forth several theories for relief: (1) breach of contract; (2) fraud; (3) estoppel; (4) declaratory judgment. Dkt. No. 1-1, pp. 14-15.  As relevant here, the declaratory judgment sought by Plaintiffs was that BONY Mellon failed to provide "a proper and timely notice of default" to the Plaintiffs before attempting to foreclose. Id., at 16.  The filing of Plaintiffs's January 2018 lawsuit resulted in the automatic dismissal – as a matter of law – of the then-pending non-judicial foreclosure application filed by Bayview in the 357th District Court. Boren v. U.S. Nat. Bank Ass'n, 807 F.3d 99, 102, n. 1 (5th Cir. 2015) (citing TEX. R. CIV. P. 736.11).

4

In that lawsuit's factual recitation, Plaintiffs – in the 103rd District Court – alleged that they "were ultimately informed that the loan modification had been approved in 2010." Id., p. 14.  Plaintiffs claimed that BONY Mellon breached the contract by not funding "the loan modification which had been approved by Bank of America." Id., p. 14.  Moreover, Plaintiffs alleged that BONY Mellon committed fraud, but did not specifically identify any fraudulent statements that were made. Dkt. No. 1-1, p. 14.  Finally, Plaintiffs asserted that BONY Mellon "should be equitably estopped from being able to accrue or charge any interest on the Note as against the Plaintiffs as a result of its failure to process and close the Loan Modification and to otherwise comply with its obligations." Id, pp. 15-16.

Plaintiffs also sought a declaratory judgment that, until the loan modification process was completed, BONY Mellon be "prevented from pursuing any remedies under the Note and/or Deed of Trust." Id., p. 16.  Plaintiffs also claimed that BONY Mellon "failed to comply with the provisions of the Note and Deed of Trust by failing to provide a proper and timely notice of default and that [BONY Mellon] is therefore precluded from accelerating the provisions of the Note and Deed of Trust," as well as from pursuing any foreclosure proceedings.

On February 23, 2018, within 30 days of being served with the petition, BONY Mellon timely removed the case – this time the one originally filed in the 103rd District Court – to this Court. Dkt. No. 1.

On March 14, 2019, BONY Mellon filed a motion for summary judgment. Dkt. No. 16.  BONY Mellon argued that summary judgment was appropriate for five reasons, which the Court restates as follows: (1) Plaintiffs have not raised a valid claim of promissory estoppel and the statute of frauds bars such a claim; (2) the statute of frauds bars any breach of contract claim; (3) Plaintiffs cannot sustain a fraud claim because BONY Mellon made no factual misstatements or any fraudulent statements, and, as applicable here, the statute of frauds bars any fraud claim; (4) the Plaintiffs cannot sustain a request for declaratory relief; and, finally, (5) the loan documents complied with Section 50, Article XVI of the Texas

Constitution. Id.

On April 15, 2019, Plaintiffs timely filed a response brief. Dkt. No. 19. As to the first three issues generally, Plaintiffs argue that the statute of frauds does not bar their claims for breach of contract, fraud, and estoppel, because Plaintiffs are not seeking to have a modification enforced, but rather "are seeking an abatement of the accrual of interest and charges during the inordinate amount of time that it took [. . .] to process the Loan modification request and properly advise Plaintiffs of the outcome." Id, pp. 14-15. Plaintiffs also argue that they can sustain a claim for promissory estoppel as a defense to the statute of frauds. Plaintiffs further claim that the accrued interest and charges are not "benefit-of-the-bargain" damages, but rather, are reliance damages stemming from BONY Mellon's failure to timely process the modification application and its misrepresentations concerning its decision to deny the modification. Id. Plaintiffs do not specify what those amounts are or how they should be calculated.

As to the fourth issue, Plaintiffs argue that they are entitled to a declaratory judgment that the act of mailing the account statements – which sought less than the full amount of the total remaining balance – served as an abandonment of the prior acceleration of the loan. Dkt. No. 19, pp. 12-14. Plaintiffs further assert that, because the prior acceleration was abandoned, there was no proper acceleration to support the second foreclosure suit. Id., pp. 12-14. As to the final issue, Plaintiffs concede that the loan documents complied with Section 50, Article XVI of the Texas Constitution and "are not making claim to the inadequacies of such instruments." Id., p. 12.

In their response brief, Plaintiffs also asserted, for the first time, that BONY Mellon and Bank of America acted negligently in deciding the loan modification application and can be held liable for that purported negligence. Dkt. No. 19.

On April 29, 2019, BONY Mellon filed a reply brief. Dkt. No. 22. As to the claims for promissory estoppel, breach of contract and fraud, BONY Mellon reiterated its argument that the statute of frauds bars those claims and that Plaintiffs have failed to establish the facts

necessary to establish every element of a promissory estoppel claim. Id., pp. 13-18.  As to the issue of whether BONY Mellon abandoned its acceleration of the note, BONY Mellon argued that the issue is moot because "both judicial foreclosure actions initiated by BONY Mellon were dismissed in 2016, no foreclosure or sale has actually occurred, and there is no currently scheduled foreclosure sale based on a supposed faulty acceleration." Id., p. 5. BONY Mellon further argues that, even if the issue is not moot, the sending of the account billing statements did not constitute abandonment of the acceleration. Id.

As to the newly-raised issue of negligence, BONY Mellon asserted that the claim is not properly before the Court, and even if it is, Plaintiffs have failed to show the existence of a necessary element.  BONY Mellon asserts that "there is no legal, statutory, or contractual obligation for a mortgage lender or servicer to grant its borrower a loan modification or even to review [the borrower's eligibility] for such modification, let alone an obligation to respond to a request for a loan modification in any particular time frame." Id., pp. 10-11.  Finally, BONY Mellon argues that the accrual of interest and late fees were part of the benefit of the bargain in the original loan, rather than reliance damages, since the interest and fees were part of the contract. Id.

On May 20, 2019, Plaintiffs filed a sur-reply, arguing that there is a material issue of fact as to whether BONY Mellon abandoned the acceleration. Dkt. No. 23.  Plaintiffs further argued that BONY Mellon had "an obligation to process the loan modification requests in a non-negligent manner," and that the standard of care for determining negligence is based upon a consent order between Bank of America and the Government. Id, p. 8.  Finally, Plaintiffs argued that they have introduced sufficient evidence to create a genuine issue of material fact as to their fraud, estoppel, and misrepresentation claims. Id, p. 10.

On June 13, 2019, the Court notified the parties that it was considering entering summary judgment for the Plaintiffs on the issue of whether BONY Mellon abandoned its prior acceleration of the note, and afforded the parties until June 24, 2019, to file any additional evidence or argument. Dkt. No. 24.

On June 24, 2019, BONY Mellon filed its supplemental brief, noting that it had sent the May 20, 2019 letter, expressly rescinding the prior acceleration of the note. Dkt. No. 25. Based upon that letter, BONY Mellon argued that any declaratory judgment claim is now moot. Id.

## II. Applicable Law

### A. Diversity Jurisdiction

As relevant here, federal courts have jurisdiction over civil actions where (1) "the matter in controversy exceeds the sum or value of $75,000;" and, (2) the action is between citizens of different States. 28 U.S.C. § 1332(a)(1).  No party disputes that diversity jurisdiction exists in this case. Dkt. No. 9, p. 2.

In a case where jurisdiction is based upon diversity of citizenship, the federal court applies state substantive law and federal procedural law. Camacho v. Texas Workforce Comm'n, 445 F.3d 407, 409 (5th Cir. 2006).  "Substantive law includes not only the factual elements which must be found to impose liability and fix damages, but also the burdens of going forward with evidence and of persuasion thereon." Cimino v. Raymark Indus., Inc., 151 F.3d 297, 311 (5th Cir. 1998).  "If no state court decisions control, [a federal court] must make an 'Erie[2] guess' as to how the Texas Supreme Court would apply state law." Beavers v. Metro. Life Ins. Co., 566 F.3d 436, 439 (5th Cir. 2009) (footnote added).

While the Court applies state substantive law in a diversity jurisdiction case, "federal courts follow the federal rule of summary judgment procedure." F.D.I.C. v. Shrader & York, 991 F.2d 216, 220 (5th Cir. 1993).

### B. Summary Judgment

Summary judgment is appropriate when the moving party has established that the pleadings, depositions, answers to interrogatories, admissions, and affidavits – if any – demonstrate that there is no genuine issue as to any material fact and that the moving party

---

[2] Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).

is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).  A genuine issue is "real and substantial, as opposed to merely formal, pretended, or a sham." Bazan v. Hidalgo Cnty., 246 F.3d 481, 489 (5th Cir. 2001).  A material fact is one that might influence the outcome of the suit. Id.  Accordingly, a "genuine issue of material fact exists where evidence is such that a reasonable jury could return a verdict for the non-movant." Piazza's Seafood World, L.L.C. v. Odom, 448 F.3d 744, 752 (5th Cir. 2006).

In this case, the Defendants – who do not bear the burden of proof at trial as to any issue in this case – have moved for summary judgment.  As such, the Defendants may prevail on a summary judgment motion "by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element" of the Plaintiffs's claim. Norwegian Bulk Transport A/S v. International Marine Terminals Partnership, 520 F.3d 409, 412 (5th Cir. 2008).  The burden then shifts to the Plaintiffs, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. Id.

Additionally, the Court must review all evidence in the light most favorable to the non-moving party. Piazza's Seafood World, 448 F.3d at 752.  Factual controversies must be resolved in favor of the non-moving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Murungi v. Xavier Univ. of La., 313 Fed. App'x. 686, 688 (5th Cir. 2008) (unpubl.) (citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).  Thus, "in the absence of proof," the court cannot "assume that the nonmoving party could or would prove the necessary facts." Little, 37 F. 3d at 1075.  Finally, "a court should not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment." Chacon v. Copeland, 577 Fed. App'x. 355, 360 (5th Cir. 2014) (unpubl.) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)) (internal quotations omitted).

A claim which is not raised in the operative complaint, but is raised only in response to a motion for summary judgment, is not properly before the Court. Jones v. Wells Fargo Bank, N.A., 858 F.3d 927, 935 (5th Cir. 2017) (citing Cutrera v. Bd. of Supervisors of La. State Univ., 429 F.3d 108, 113 (5th Cir. 2005)).

### C. Promissory Estoppel

"Promissory estoppel operates to enforce an otherwise unenforceable promise." Superior Laminate & Supply, Inc. v. Formica Corp., 93 S.W.3d 445, 449 (Tex. App. 2002). It "cannot replace an enforceable contract." Id.

Under Texas law, "the elements of promissory estoppel are as follows: (1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to his detriment." Davis v. Texas Farm Bureau Ins., 470 S.W.3d 97, 107 (Tex. App. 2015).

If promissory estoppel is used to respond to a statute of frauds defense, there is an additional element.  In such cases, "a promise to sign an existing writing incorporating all the terms of the agreement and which would satisfy the statute of frauds[]" is required. Bagwell v. BBVA Compass, No. 05-14-01579-CV, 2016 WL 3660403, at *12 (Tex. App. July 7, 2016).

### D. Breach of Contract

"A plaintiff asserting a breach-of-contract claim must prove (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach." USAA Texas Lloyds Co. v. Menchaca, 545 S.W.3d 479, 502 n. 21 (Tex. 2018).

"It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc., 518 S.W.3d 432, 436 (Tex. 2017).

### E. Fraud

Under Texas law, the elements of a fraud claim are that "(1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the

defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result." JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C., 546 S.W.3d 648, 653 (Tex. 2018), reh'g denied (June 15, 2018).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).

### F. Declaratory Judgment

The Declaratory Judgment Act permits a federal court to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).

"A declaratory judgment action is ripe for adjudication only where an 'actual controversy' exists." Orix Credit All., Inc. v. Wolfe, 212 F.3d 891, 896 (5th Cir. 2000). "As a general rule, an actual controversy exists where 'a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests.' " Id. "The threat of litigation, if specific and concrete, can . . . establish a controversy upon which declaratory judgment can be based." Id, at 897.

### G. Abandonment of Acceleration

Texas law provides that a claim to foreclose on a real property lien "accrues when the note reaches its maturity date or the holder exercises its option to accelerate the note's maturity date." Pitts v. Bank of New York Mellon Tr. Co., No. 05-17-00859-CV, 2018 WL 6716933, at *3 (Tex. App. Dec. 21, 2018). A noteholder that chooses to accelerate the maturity date may also unilaterally choose to abandon that acceleration and return the note to its original maturity date. Leonard v. Ocwen Loan Servicing, L.L.C., 616 F. App'x 677, 679 (5th Cir. 2015). The noteholder can abandon its acceleration either expressly or through its actions. Khan v. GBAK Properties, Inc., 371 S.W.3d 347, 356 (Tex. App. 2012).

The Texas Supreme Court "has not decided whether a lender may abandon its acceleration of a loan by its own unilateral actions and, if so, what actions it must take to

effect abandonment." <u>Boren v. U.S. Nat. Bank Ass'n</u>, 807 F.3d 99, 105 (5th Cir. 2015).  The Fifth Circuit, in making an <u>Erie</u> guess, concluded that the Texas Supreme Court "would likely hold that a lender may unilaterally abandon acceleration of a note, thereby restoring the note to its original condition [. . .] by sending notice to the borrower that the lender is no longer seeking to collect the full balance of the loan and will permit the borrower to cure its default by providing sufficient payment to bring the note current under its original terms." <u>Id</u>.

## III. Analysis

Between their complaint and their response to the summary judgment motion, Plaintiffs have raised the following claims: (1) negligence, based upon BONY Mellon's failure to "properly fulfill their duties to process a Loan modification request in a timely manner"; (2) promissory estoppel; (3) breach of contract; (4) fraud; and (5) entitlement to a declaratory judgment that BONY Mellon abandoned its prior acceleration of the note and cannot foreclose on the property unless and until a proper notice of default is provided.  The Court considers each of these claims in turn.

### A. Negligence

Plaintiffs are seeking to "recover an offset of all accrued interest and charges arising as a result of the failure of Bank of America and BONY Mellon to properly fulfill their duties to process a Loan modification request in a timely manner."[3] Dkt. No. 19, p. 15.  Plaintiffs allege that this duty arose from a Consent Order between Bank of America and the

---

[3] Plaintiffs assert that BONY Mellon can be held liable for the actions of Bank of America because BONY Mellon is not the holder of the note "in due course." Dkt. No. 19, p. 16. Under Texas law, one cannot be a "holder in due course" if he or she had notice that payments on the note were overdue at the time of purchase. TEX. BUS. & ORG. CODE § 3.302(2)(C).

Because the loan was already in default, at the time of BONY Mellon's acquisition of the note from Bank of America, BONY Mellon should not be considered a holder in due course under Texas law.  The Court will assume, without deciding, that – based on lack of holder in due course protections – BONY Mellon can be held derivatively liable for any actions taken by Bank of America.  As discussed further below, this assumption does not alter the ultimate outcome in this case.

Government, which required Bank of America to "to ensure that decisions concerning the loss mitigation or loan modifications continue to be made and communicated in a timely fashion." Dkt. No. 19, pp. 15-16; Dkt. No. 19-8, p. 20.  BONY Mellon is entitled to summary judgment as to this claim.

As an initial matter, this claim was never raised in the complaint. Dkt. No. 1-1, p. 9. Instead, Plaintiffs raised this claim for the first time in their response to the motion for summary judgment. Dkt. No. 19, pp. 13-16.  "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." Cutrera v. Bd. of Sup'rs of Louisiana State Univ., 429 F.3d 108, 113 (5th Cir. 2005).  Accordingly, the Court should decline to consider this claim.

Even if the Court were to consider this claim on the merits, Plaintiffs fare no better. Plaintiffs argue that BONY Mellon acted negligently in processing the loan modification application. See Dkt. No. 23, p. 7 (claiming that Bank of America and BONY Mellon "were under an obligation to process the loan modification requests in a non-negligent manner."). Simply stated, Plaintiffs have failed to establish all of the elements of this negligence claim.

"The elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." IHS Cedars Treatment Ctr. of DeSoto, Texas, Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004).  Plaintiffs assert that the Consent Order between Bank of America and the Government created an affirmative duty for Bank of America "to ensure that decisions concerning the loss mitigation or loan modifications continue to be made and communicated in a timely fashion." Dkt. No. 19, pp. 15-16.

The Consent Order was a contract between the Treasury Department and Bank of America. Dkt. No. 19-8; see also Robinson v. Vollert, 602 F.2d 87, 92 (5th Cir. 1979) ("Consent orders are interpreted as contracts.").  Even if the Court assumes, for the sake of argument, that Bank of America's conduct violated the terms of the Consent Order, Bank of America did not have a legal duty to process the application in timely manner independent

13

of the Consent Order.  "As a prerequisite to asserting a claim of negligence, there must be a violation of a duty imposed by law independent of any contract." JPMorgan Chase Bank, N.A. v. Prof'l Pharmacy II, 508 S.W.3d 391, 421 (Tex. App. 2014).  Because this alleged duty did not exist independently of the contract – i.e., the Consent Order – Plaintiffs have not demonstrated that a legal duty existed.  This failure is fatal to any negligence claim. See Harris v. Serenity Found. of Texas, No. 11-17-00068-CV, 2019 WL 470671, at *2 (Tex. App. Feb. 7, 2019) ("the lack of duty precludes the imposition of liability in a negligence case") (citing Kroger Co. v. Elwood, 197 S.W.3d 793, 794 (Tex. 2006)).

Additionally, Plaintiffs cannot maintain a breach of contract claim against BANA for failing to comply with the Consent Order.  Courts have consistently found that homeowners do not have standing to enforce the terms of a consent order that banks have entered into with the Government. See Shatteen v. JP Morgan Chase Bank, N.A., 519 F. App'x 320, 321 (5th Cir. 2013) (Plaintiff "has no standing to enforce consent decrees to which she is not a party"); Dempsey v. U.S. Bank Nat., No. 4:10CV679, 2012 WL 2036434, at *6 (E.D. Tex. June 6, 2012) (same); Bailey v. BAC Home Loans Servicing, LP, No. 4:11CV590, 2012 WL 5497632, at *3 (E.D. Tex. Nov. 13, 2012), report and recommendation adopted, No. 4:11CV590, 2013 WL 1131623 (E.D. Tex. Mar. 18, 2013) (same); Reynolds v. Bank of Am., N.A., No. 3:12-CV-1420-L, 2013 WL 1904090, at *3 (N.D. Tex. May 8, 2013) (same); Bagala v. Bank of Am., No. CIV.A. H-13-0160, 2013 WL 4523562, at *2 (S.D. Tex. Aug. 27, 2013).

Plaintiffs have pointed to no language in the Consent Order which gives homeowners a private right to enforce the terms of the order.  Indeed, the terms of the order state that nothing in it "shall give to any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy or claim" under the order. Dkt. No. 19-8, p. 28.  Thus, even if Bank of America or BONY Mellon owed a duty pursuant to the consent order, it is not a duty that can be enforced by a private individual against the banks.  Accordingly, Plaintiffs have no private right to enforce the terms of the

Consent Order.  Thus, BONY Mellon's motion for summary judgment should be granted for any claims based upon the Consent Order.

### B. Promissory Estoppel

Plaintiffs have raised a claim of promissory estoppel.  Again, Plaintiffs have failed to meet their burden, making summary judgment in BONY Mellon's favor appropriate.

### 1. Lack of Promise or Reliance

As previously noted, promissory estoppel is based upon a claim that a plaintiff acted in reasonable reliance upon an "otherwise unenforceable" promise. Hairston v. S. Methodist Univ., 441 S.W.3d 327, 335 (Tex. App. 2013).  In this case, Plaintiffs must establish:  (1) that BONY Mellon made a promise; (2) that BONY Mellon should have expected that Plaintiffs would rely on the promise; and (3) that  Plaintiffs relied upon the promise to their detriment. Ogle v. Hector, No. 03-16-00716-CV, 2017 WL 3379107, at *2 (Tex. App. Aug. 2, 2017), review denied (Jan. 5, 2018).

As an initial matter, Plaintiffs do not identify a promise that was made by BONY Mellon or BANA, much less a promise that they could reasonably and justifiably rely upon. See Stable Energy, L.P. v. Kachina Oil & Gas, Inc., 52 S.W.3d 327, 336 (Tex. App. 2001) ("To enforce a representation by promissory estoppel, the first requisite is an actual promise.").  In order for a statement to qualify as an actual promise, for estoppel purposes, it must be "sufficiently specific and definite so that it would be reasonable and justified for the promisee to rely on it as a commitment to future action." Ogle, 2017 WL 3379107, at *2.

Plaintiffs, in their response, assert that BANA told them that "the loan modification process would take approximately 90-120 days," but do not cite any specific evidence for this claim. Dkt. No. 19, p. 7.[4]  This type of prediction does not rise to the level of an actionable promise; the statement created "no clear limit on [BONY Mellon's] freedom of action."

---

[4] Plaintiffs' response seems to point to Valenzuela's affidavit in support of this assertion. The Court did not see a time frame alleged in the affidavit. Dkt. No. 19-9.  Despite this fact, even if the representation was made, for the reasons discussed later, it has no affect upon the outcome.

Gilmartin v. KVTV-Channel 13, 985 S.W.2d 553, 558 (Tex. App. 1998). Even accepting Plaintiffs' representation that BANA stated that the process would take approximately 90 to 120 days, such a statement is more akin to a prediction than it is to a "definite, unconditional promise." Davis v. Texas Farm Bureau Ins., 470 S.W.3d 97, 108 (Tex. App. 2015) (an unconditional promise must be so specific and definite that it can be considered a "commitment to future action").

Furthermore, even if the Court assumes that the timeline was a promise, Plaintiffs have not shown that they relied on the promise to their detriment. In order for Plaintiffs to establish their reliance, they must have changed their behavior in response to the promise. See In re Houston Reg'l Sports Network, L.P., 547 B.R. 717, 753 (Bankr. S.D. Tex. 2016) ("The vital principle of estoppel is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by destroying the expectations upon which he acted.") (emphasis added) (quoting Montgomery Indus. Int'l, Inc. v. Thomas Const. Co., 620 F.2d 91, 96 (5th Cir. 1980)).

Plaintiffs were already in default when they filed the modification application. Indeed, they have never pled that, but for the alleged mishandling of the modification application, they would have resumed making payments. This is not a case where the homeowners were current on their mortgage, but struggling financially, and the bank induced them to default as a prerequisite to a loan modification. See Dkt. No. 16-2 (noting the Plaintiffs' monthly income). Plaintiffs made no payments before Bank of America's acts and made no payments after those actions are alleged to have taken place. Accordingly, there is no evidence in the record that Plaintiffs altered their conduct based upon any alleged promise.

Thus, Plaintiffs have failed to meet their burden as to each element of their promissory estoppel claim.

### 2. Statute of Frauds

In this case, BONY Mellon has raised the defense of the statute of frauds against the promissory estoppel claim. Dkt. No. 16, p. 15.  Under the statute of frauds in Texas, "an agreement regarding the transfer of the property or modification of a loan must . . . be in writing to be valid." Martins v. BAC Home Loans Servicing, L.P., 722 F.3d 249, 256 (5th Cir. 2013).  Given the nature of the agreement in this case, the statute of frauds would appear to be applicable and Plaintiffs have not established the necessary elements to overcome its application.

Plaintiffs have asserted that promissory estoppel is an exception to the statute of frauds. Dkt. No. 19, p. 19.  While such an assertion may sometimes be true, on this occasion it is incomplete.  "When promissory estoppel is raised to bar the application of the statute of frauds, there is an additional requirement that the promisor promised to sign a written document complying with the statute of frauds." Ford v. City State Bank of Palacios, 44 S.W.3d 121, 139 (Tex. App. 2001).  In other words, when the plaintiff claims that the statute of frauds is not a defense, because of the existence of promissory estoppel, the promise at issue must include a promise to sign a written document that would have complied with the statute of frauds. Id.

There is no evidence in the record that BONY Mellon ever promised to sign a written loan modification agreement or that such a document was ever prepared.  Accordingly, any claim for promissory estoppel is barred by the statute of frauds.[5]  For these reasons, BONY Mellon's motion for summary judgment should be granted as to any claim of promissory estoppel.

---

[5] BONY Mellon has also argued that the statute of frauds applies as a defense to the breach of contract and fraud claims. Dkt. No. 16, pp. 15-18.  Accordingly, the foregoing analysis applies equally to Plaintiffs' claims of  breach of contract or fraud, which are barred by the statute of frauds.

### C. Breach of Contract

#### 1. Plaintiffs breached contract first, precluding relief

In order to maintain a breach of contract claim under Texas law, Plaintiffs must establish that they did not breach the contract first. Bartush-Schnitzius Foods, 518 S.W.3d at 436. Plaintiffs have failed to meet that burden.

Plaintiffs, in their response brief, do not specifically state when or how BONY Mellon or Bank of America breached the contract; instead, Plaintiffs argue that BONY Mellon's misrepresentations caused or contributed to Plaintiffs' breach. Dkt. No. 23, p. 2. As an initial matter, the Fifth Circuit has stated that "a claim for breach of a note and deed of trust must identify the specific provision in the contract that was breached." Williams v. Wells Fargo Bank, N.A., 560 F. App'x 233, 238 (5th Cir. 2014). Plaintiffs have not done so in this case.

Furthermore, the timeline of established facts does not support their argument. In the context of a mortgage dispute, the homeowner cannot maintain a breach of contract claim if they failed to properly make the payments due and owing under the terms of the note. Villarreal v. Wells Fargo Bank, N.A., 814 F.3d 763, 767 (5th Cir. 2016). The evidence in this case is undisputed. Plaintiffs have not made a single loan payment since the payment made on October 1, 2009; they did not make the payment that was due on November 1, 2009. Dkt. No. 16-2, p. 4. The failure to make all timely payments constitutes a breach of the contract. Thomas v. EMC Mortg. Corp., 499 F. App'x 337, 341 (5th Cir. 2012) (citing Dobbins v. Redden, 785 S.W.2d 377, 378 (Tex. 1990)). According to Enrique Valenzuela's affidavit, the earliest date that Bank of America made any possible misrepresentation was in November 2009, when it purportedly instructed the Plaintiffs to stop making payments while the loan modification request was pending. Dkt. No. 19-9, p. 2. By the time that occurred, Plaintiffs had already missed at least one loan payment. Thus, any such misrepresentations – by definition – could not have caused the Plaintiffs to have breached the contract.

Accordingly, Plaintiffs have introduced no facts to show their compliance with the terms of the note; this failure is fatal to any claim for breach of contract. Villarreal, 814 F.3d at 767.

Furthermore, Plaintiffs cannot maintain a breach of contract claim for BONY Mellon's failure to agree to a loan modification. In order to sustain a claim for breach of contract, the Plaintiffs must introduce evidence demonstrating "the existence of a valid contract." TRO-X, L.P. v. Anadarko Petroleum Corp., 548 S.W.3d 458, 465 (Tex. 2018). There is no evidence in the record that BONY Mellon ever agreed to a loan modification. Indeed, even Plaintiffs concede they "do not seek to enforce the granting of a loan modification." Dkt. No. 19, p. 15. Accordingly, BONY Mellon's motion for summary judgment should be granted as to any claims for breach of contract.

**D. Fraud**

**1. Plaintiffs fail to identify a fraudulent statement**

Plaintiffs do not clearly identify which statements are purportedly fraudulent. In their sur-reply, the Plaintiffs merely state that the complaint and Enrique Valenzuela's affidavit "provide the necessary who, what, where, when and how allegations of fact to support the fraud claims made by Plaintiffs." Dkt. No. 23, p. 12. Plaintiffs do not identify the statements and/or the speaker who allegedly made the purportedly fraudulent statement. Accordingly, this claim must also fail.

FED. R. CIV. P. 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." The Court is to enforce this rule "strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent ... and explain why the statements were fraudulent." Hoffman v. L & M Arts, 838 F.3d 568, 577 (5th Cir. 2016) (quoting Herrmann Holdings, Ltd. v. Lucent Techs. Inc., 302 F.3d 552, 564-65 (5th Cir. 2002)) (ellipses original).

The failure to meet the Rule 9 standard is typically raised as a failure to meet the pleading standards, resulting in dismissal under Rule 12. However, "while failure to state a claim usually warrants dismissal under Rule 12(b)(6), it may also serve as a basis for summary judgment." Martin v. Lennox Int'l Inc., 342 F. App'x 15, 17 (5th Cir. 2009) (quoting Whalen v. Carter, 954 F.2d 1087, 1098 (5th Cir. 1992)) (internal quotation marks

omitted).  Accordingly, summary judgment for Defendants is proper where Plaintiffs fail to meet the Rule 9(b) standard, in that Plaintiffs' fail to clearly set out the fraudulent statements made by BONY Mellon.

Furthermore, even if the Court were to look past Plaintiffs' failure to specifically cite the fraudulent statements, Plaintiffs fare no better.

### 2. Plaintiffs cannot show scienter

Affording Plaintiff the benefit of the doubt, the only possible fraudulent statement in the record occurred when an unnamed Bank of America representative – in McAllen, Texas, in August 2011 – purportedly informed Enrique Valenzuela that the loan modification was still being processed and more documents were needed. Dkt. No. 19-9, pp. 2-3.  This statement was allegedly made, despite the fact that on May 21, 2011, Bank of America sent Plaintiffs a letter denying their request for a modification of the loan. Dkt. No. 16-2, p. 66. Assuming the representative's statement was as Plaintiff purports, Plaintiffs still fail to allege the elements necessary to establish fraud.

As previously noted, there are four elements to a fraud claim: (1) a false material representation; (2) that the defendant knew the representation or statement was false, or recklessly made without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to rely upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation, causing an injury. Orca Assets G.P., 546 S.W.3d at 653.  Even if the Court assumes that the first element of the four part test is met, i.e. that the statement constituted a false material representation, there is not a genuine dispute of material fact as to the second element.

Under Texas law, the second element of fraud – knowingly or recklessly making a false statement – requires scienter. Rhine v. Priority One Ins. Co., 411 S.W.3d 651, 659 (Tex. App. 2013).  There is no evidence in the record to meet the "knowing" standard, i.e., that the BANA representative knew that the modification had been denied when the conversation took place.  Nor have Plaintiffs introduced any facts to show that the purported statement was

recklessly made, as to the truth of the matter.

"Under the 'reckless' standard, the speaker must have known he did not have sufficient information or basis to make the statement, but made it anyway as a positive assertion and with the intent it be relied upon." Forgetaboutit, Inc. v. Warner, No. 09-04-503 CV, 2005 WL 3219578, at *2 (Tex. App. Dec. 1, 2005) (citing Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 527 (Tex. 1998)). There is no evidence in the record that the BANA representative "must have known" that he lacked "sufficient information," regarding the status of the loan modification, but chose to opine that the modification request was still pending.[6]

Accordingly, Plaintiffs have failed to meet their burden as to the fraud claim. Even if the Plaintiffs had created a genuine dispute of material fact as to the element of scienter, the result in this case is unchanged.

### 3. Plaintiffs's claims are barred by the economic loss rule

Despite the fact that a fraud claim is a tort, Plaintiffs's claim sounds in contract. And, as such, is barred by the economic loss rule.

Under Texas law, a party's conduct "may often ostensibly implicate both contractual obligations and various tort duties." Shakeri v. ADT Sec. Servs., Inc., 816 F.3d 283, 292 (5th Cir. 2016). In order to determine whether a claim sounds in contract or tort law, the Court looks to the nature of the injury and the damages sought. Id. (citing Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex. 1986)). "The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." Chapman Custom Homes, Inc. v. Dallas Plumbing Co., 445 S.W.3d 716, 718 (Tex. 2014).

When the parties are in contractual privity, a party can maintain a tort claim "when

---

[6] Again, the Court is assuming, without deciding, that BONY Mellon can be held derivatively liable for the actions taken by Bank of America based upon the fact that BONY Mellon is not the holder in due course of the note.

the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." Id.  The crux of the economic loss rule is that if the claims and damages originate from the breach of a contract, a plaintiff cannot evade their breach of contract claim by framing the issue as a tort claim, even if the opposing party's conduct was also tortious. Chapman Custom Homes, 445 S.W.3d at 718.

In this case, Plaintiffs "are seeking an abatement of the accrual of interest and charges during the inordinate amount of time that it took for [Bank of America and BONY Mellon] to process the Loan modification request and properly advise Plaintiffs of the outcome." Dkt. No. 19, p. 15.  Plaintiffs claim that the late fees and compounding interest – that accrued during the time that the bank did not promptly decide their modification request – injured them, in part, because the total balance of the mortgage grew to the point that they could not qualify for a subsequent modification. Dkt. No. 19, p. 22.  Plaintiffs do not allege the exact amount of their loss or even how it should be properly calculated.  Even so, this claim is barred by the economic loss rule.

The accrual of interest and late fees are part and parcel of the subject of the underlying note.  They did not exist independent of the note.  The contractual benefit between the parties was that the bank would provide Plaintiffs with the money to purchase the home and Plaintiffs would repay that loan with interest, with the home serving as the collateral for the note.  The interest and fees that accrued did not exist independently of the contractual bargain, but were an integral part of the basis of the bargain and, as such, are barred by the economic loss rule.

This is not the first time that a home loan borrower has labeled a breach of contract a tort.  Under the instant circumstances, courts have consistently found that the damages based on the accrual of interest charges were barred by the economic loss rule. See Narvaez v. Wilshire Credit Corp., 757 F. Supp. 2d 621, 634 (N.D. Tex. 2010) ("the increase of his mortgage payments and excess interest and penalty fees [. . .] are in no way independent of

the subject matter of the deed of trust or note, and so Plaintiff cannot recover for a tort of negligent misrepresentation."); Shellnut v. Wells Fargo Bank, N.A., No. 02-15-00204-CV, 2017 WL 1538166, at *12 (Tex. App. Apr. 27, 2017), review denied (Nov. 16, 2018) (any claim for damages "due to the increased fees and costs that Lender charged under the loan documents as a result of his continuing default during the time he was seeking a loan modification" was barred by the economic loss doctrine). The same holds true in this case.

On the other hand, where there was evidence that the damages existed independently of the contract claims against mortgage lenders, the claim was found to not be barred by the economic loss rule. See Stapp v. Bank of Am., N.A., No. 4:11CV203, 2012 WL 3853440, at *5 (E.D. Tex. Sept. 5, 2012), report and recommendation adopted, No. 4:11CV203, 2012 WL 4502426 (E.D. Tex. Sept. 28, 2012) ("harm to credit reputation, credit worthiness, and credit history" were injuries independent of the note); Choe v. Bank of Am., N.A., No. 3:13-CV-0120-D, 2013 WL 6159308, at *6 (N.D. Tex. Nov. 25, 2013) ("filing fees, court costs, and attorney's fees" were injuries independent of the note); Smith v. CitiMortgage, Inc., No. 4:10CV693, 2012 WL 629058, at *6 (E.D. Tex. Feb. 27, 2012), report and recommendation adopted, No. 4:10CV693, 2012 WL 1080593 (E.D. Tex. Mar. 30, 2012) ("mental anguish, lost time, and loss of creditworthiness" were independent injuries).

Indeed, the Plaintiffs have cited Choe for the proposition that "alleged misrepresentations made by the lenders and the failure of the lenders to follow through on the processing of the loan modification requests" are not barred by the economic loss rule. Dkt. No. 23. In this case, however, Plaintiffs have not claimed damages that are outside of the economic loss rule. Instead, they have sought the rescission of the interest and late fees that accrued during the time their modification request was pending. Thus, Choe's analysis of the economic loss rule is not applicable to the facts of the instant case.

To the extent Plaintiffs' claims based upon fraud otherwise survived, they are barred by the economic loss doctrine. For that reason, BONY Mellon's motion for summary judgment should be granted as to any claims of fraud.

### E. Abandonment

Plaintiffs argue that BONY Mellon has abandoned its prior acceleration of the note. Based upon that assertion, Plaintiffs seek a declaratory judgment that BONY Mellon should not be permitted to foreclose until a new notice of default and acceleration is issued.  If a party seeks to foreclose for non-payment prior to the maturity date of a note, the party must first give notice that the maturity date has been accelerated and give the homeowner an opportunity to cure the default. Smither v. Ditech Fin., L.L.C., 681 F. App'x 347, 352 (5th Cir. 2017) (citing Ogden v. Gibraltar Sav. Ass'n, 640 S.W.2d 232, 233 (Tex. 1982)).  BONY Mellon argues that this claim is moot because it expressly abandoned its prior acceleration.

Mootness goes to jurisdiction; if the parties lack sufficient legal interest in the outcome of the case, the Court lacks the jurisdiction to adjudicate it. Scruggs, 392 F.3d at 128.  This case is moot.

"Whether an actual controversy exists must be determined on a case-by-case basis, but, as a general rule, one exists where a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests." TOTAL Gas & Power N. Am., Inc. v. Fed. Energy Regulatory Comm'n, 859 F.3d 325, 333 (5th Cir. 2017), as revised (July 10, 2017).  "The mootness doctrine requires that the controversy posed by the plaintiff's complaint be 'live' not only at the time the plaintiff files the complaint but also throughout the litigation process." Employers Mut. Cas. Co. v. Raddin, 506 F. App'x 312, 313 (5th Cir. 2013) (quoting Rocky v. King, 900 F.2d 864, 866 (5th Cir. 1990)).  In this case, no such controversy currently exists between the parties.

The Court begins by noting that the underlying facts of this claim are not in dispute. On April 14, 2015, Bayview notified Plaintiffs of its intent to accelerate the loan if the default was not cured within 30 days. Dkt. No. 16-2, p. 90.  When that deadline passed without the default being cured, Bayview began foreclosure proceedings, by filing an application for a non-judicial foreclosure in the 357th District Court in Cameron County, Texas. Id., p. 4.

On June 16, 2015, and on September 16, 2015, Bayview sent Plaintiffs mortgage statements, which sought a payment that represented the past due balance in addition to the regular monthly payment. Dkt. No. 19-7, pp. 3-6. Each statement contained the following language: "You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure – the loss of your home." Id.

On May 20, 2019, Bayview sent Plaintiffs a letter, via counsel, which expressly abandoned the April 14, 2015, notice of acceleration. Dkt. No. 25-2.

The Plaintiffs seek a declaratory judgment that BONY Mellon abandoned its prior acceleration when it sent the billing statements in 2015. Dkt. No. 1-1, pp. 14-15. While BONY Mellon disagrees about whether the billing statements constituted abandonment, it does agree that abandonment occurred when it expressly rescinded its acceleration in May 2019. Dkt. No. 25. Plaintiffs have argued that, because BONY Mellon abandoned its acceleration in 2015, it cannot foreclose on the home without issuing a new notice of acceleration. Dkt. No. 19, pp. 12-14. Based upon the May 2019 letter, BONY Mellon agrees with that argument. See Dkt. No. 25, p. 2 (admitting that in order to foreclose on the home, "BONY Mellon would be required to reaccelerate the loan").

While the parties disagree about when the abandonment occurred, they do not disagree that the prior notice of acceleration has been abandoned and that a new notice of acceleration would need to be issued prior to any future foreclosure attempts. Dkt. No. 19, pp. 12-14; Dkt. No. 25, p. 2. Accordingly, "neither party has a 'personal stake in the outcome' of any additional litigation on this issue." Callan v. Deutsche Bank Tr. Co. Americas, 654 F. App'x 171, 172 (5th Cir. 2016) (citing Lewis v. Cont'l Bank Corp., 494 U.S. 472, 478 (1990)). Under such circumstances, any litigation as to this issue is moot and the Court lacks jurisdiction over the case. Id. The Court may sua sponte dismiss a claim for lack of jurisdiction. Crutchfield v. Sewerage & Water Bd. of New Orleans, 829 F.3d 370, 375 (5th Cir. 2016) (citing Giannakos v. M/V Bravo Trader, 762 F.2d 1295, 1297 (5th Cir. 1985)).

Accordingly, Plaintiffs's claim for declaratory judgment that BONY Mellon abandoned its prior acceleration of the note should be dismissed without prejudice for lack of jurisdiction, based on mootness.

## IV. Recommendation

It is recommended that the motion for summary judgment filed by Bank of New York Mellon, N.A., be granted as to any claims for promissory estoppel, fraud, and breach of contract.

It is further recommended that any claims for negligence raised by Enrique and Marisela Valenzuela be stricken as not being properly before the Court. In the alternative, summary judgment should be granted in favor of Bank of New York Mellon, N.A., as to any negligence claims.

It is further recommended that any claim for a declaratory judgment raised by Plaintiffs – regarding abandonment of the acceleration of the due date for the note – be dismissed without prejudice for lack of jurisdiction.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting those findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings

on appeal, except upon grounds of plain error. <u>Alexander v. Verizon Wireless Servs., L.L.C.</u>, 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas, on June 28, 2019.

_____
Ronald G. Morgan
United States Magistrate Judge

27